1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MAC DAVID COCHRAN,

Petitioner,

vs.

DERRAL G. ADAMS,

Respondent.

CASE NO. 04CV1796-LAB (WMc)

**ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION; DENYING REQUEST FOR EVIDENTIARY HEARING; ACCEPTING REPORT AND RECOMMENDATION WITH MODIFICATION; AND DISMISSING PETITION**

[Dkt Nos. 43, 48, 49]

In its September 28, 2005 Order, this court dismissed five of petitioner Mac David Cochran's ("Cochran") ten claims for 28 U.S.C. § 2254 habeas relief as procedurally defaulted, leaving to be resolved only his Petition Claims Three, Four, Five, Six, and Ten. Magistrate Judge William McCurine, Jr. has entered a Report and Recommendation ("R&R") for disposition of the five remaining grounds, recommending the Petition be denied on the merits in its entirety. Cochran filed 42 pages of Objections to the R&R. Respondent filed no Reply to the Objections. For the reasons discussed below, and after *de novo* review of the pertinent portions of the record, the court finds Cochran's Objections are without merit, he is not in custody in violation of the United States Constitution or federal law under any of the theories he advances to challenge his conviction, and the court accepts Judge McCurine's R&R analyses, legal authority (with modification), conclusions, and recommendation the Petition be denied. The court further finds no basis for an evidentiary hearing and **DISMISSES** the Petition in its entirety.

# I.   BACKGROUND

Cochran is serving a sentence of 143 years-to-life imposed January 7, 2000 for his conviction, after a bench trial, of multiple counts of Aggravated Sexual Assault of a Child (CAL. PENAL CODE § 269),  multiple counts of Forcible Lewd Acts Upon A Child (CAL. PENAL CODE § 288(b)(1)), and one count of Employing A Minor To Perform Prohibited Acts (CAL. PENAL CODE § 311.4(b)).   All the charges arose from his conduct with his minor daughter over a period of several months, as representatively memorialized in one videotape he made, seized and used by the prosecution as its primary evidence at trial.   For purposes of his Objections to the R&R, Cochran "concedes the facts contained in Parts I, II, III, and IV of the Report and Recommendation." Obj. pp. 3-4.  Those sections trace the state court proceedings, federal court proceedings, statement of facts, legal standards, and scope of review of state prisoners' federal habeas corpus petitions.

The five grounds from Cochran's federal habeas Petition that survived Respondent's Motion To Dismiss are:  (1) a violation of his right to confrontation when the prosecutor failed to call the victim as a witness (Ground Three); (2) insufficient evidence to support his convictions in Counts 1 through 38 (Ground Four); (3) entitlement to acquittal because purportedly he was not accused by any person of committing any crime (Ground Five); (4) prosecutorial misconduct in failing to call the victim as a witness (Ground Six); and (5) denial of due process and a fair trial because the prosecutor purportedly introduced perjured testimony and presented improper evidence (Ground Ten).  Pet. pp. 9-10.  As pertinent to deciding those claims, the R&R in its Section IV takes facts from the California Court of Appeal ruling on Cochran's direct appeal (Lodgment No. 4, pp. 2-3):

> The FBI, after receiving information that someone had posted child pornography on an Internet newsgroup, obtained the e-mail address of the individual who posted the pornography and traced the e-mail to Cochran.  A search of Cochran's home was conducted.  In the home police found a videotape Cochran had made of his daughter and himself, and from which the photographs on the Internet were taken.  The videotape shows Cocharn directing his daughter to engage in various sexual acts such as displaying her vaginal area to the camera, digitally penetrating herself, and penetrating herself with a dildo and a vibrator.  The videotape also shows Cochran engaging in various sexual acts with his daughter, including penetrating her vagina with his finger, a dildo, a vibrator, his penis, and sodomizing her.  **This videotape constituted the primary evidence against Cochran**.

After he was arrested, Cochran said something to the effect of "when you're caught, you're caught." **Cochran admitted** posting the photographs, stated he had made the stills in the past two months prior to the search in early February 1998 and had posted the photographs on the Internet one time. **He also admitted having had a sexual relationship with his daughter for the past four months**.

**The daughter testified** the sexual relationship with her father began in the summer before the search, when she started the fourth grade. He filmed her with the video camera only one time. She was not afraid of him. Sometimes he would hurt her "[j]ust a little bit, but not that much," and when she told him it hurt, he would stop. Afterwards, Cochran would give her money, things for school or candy. He told her not to tell anybody because he would get into trouble and would go to jail. She was sometimes sad and sometimes mad about things Cochran was doing to her.

R&R 4:10-22, *quoting* Lodg. No. 4 at 2-3 (emphasis added).

In summarizing his arguments, Cochran infers he was over-charged and the essential element of force or duress was not proven at his trial:

Jennifer was inclined and did testify that her father committed sexual acts against her. However, she also testified that she was not forced nor placed under duress to commit these acts. Petitioner, early on, admitted his misconduct, and was prepared to pay for his indiscretions. [¶] The prosecutor was not satisfied that either petitioner and his minor daughter Jennifer would admit to sexual misconduct. The prosecutor was intent on prosecuting petitioner for crimes not committed or, stated in another way, non-forcible sexual acts amounting to incest.

Pet. pp. 63-64.

Petitioner admitted misconduct against his minor daughter when it was discovered. However, petitioner did not commit any of the offenses by using force or duress. As the prosecutor plainly stated that petitioner" "cajol[ed], and coaxed Jennifer." (RT 161.) . . . . Cajoling, coaxing, coaching, and using terms of endearment cannot give rise to claims that Jennifer was forced or placed under duress.

Pet. p. 65.

Respondent's Return to the Petition, as pertinent here, contends: sufficient evidence was presented to support the finding on the element of "force" or "duress" and to support the conviction, warranting denial of Cochran's Ground Four; the prosecutor did not violate Cochran's right to confrontation by not calling the victim as a prosecution witness (Grounds Three and Five) because his daughter actually testified at trial when called as a defense witness; in closing argument, the prosecutor drew reasonable inferences from the evidence presented and, in a bench trial, there is no jury to be

1   confused or misled by argument, defeating Ground Six; and Cochran's two evidentiary objections

2   (Ground Ten) -- that the videotape was not "credible" or "proper" because the court was presented with

3   a reproduced copy "manufactured" by the prosecutor rather than the original, and the proffered

4   testimony of FBI Agent Gormley was purportedly perjured because he "mischaracterized" a package

5   of pictures of the naked girl as child pornography -- are without merit.

6   **II.      DISCUSSION**

7           **A.      Legal Standards**

8                   **1.      Federal Habeas Relief**

9           "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an

10   application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a

11   State court only on the ground that he is in custody in violation of the Constitution or laws or treaties

12   of the United States."  28 U.S.C. § 2254(a).  Section 2254 habeas proceedings measure state

13   convictions against federal constitutional requirements applicable to the states, and only errors of

14   federal constitutional magnitude will support federal intervention in state judicial proceedings to

15   correct such errors.  *See* Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989); Jackson v.

16   Ylst, 921 F.2d 882, 885 (9th Cir. 1990).  Errors of state law cannot support federal habeas corpus

17   relief, and federal courts may not reexamine state court determinations on state law issues.  Estelle v.

18   McGuire, 502 U.S. 62, 68 (1991) (a state's interpretation of its laws or rules provides no basis for

19   federal habeas corpus relief because no federal constitutional question arises).

20           Federal courts review petitions for habeas relief from state prisoners filed after April 24, 1996

21   under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Lindh

22   v. Murphy, 521 U.S. 320, 327 (1997).  Cochran filed his petition in the district court on September 7,

23   2004.  Winzer v. Hall, -- F.3d --, 2007 WL 2080154 (9th Cir. (Cal.) Jul. 23, 2007).  A writ petition

24   subject to AEDPA standards will not be granted unless the state court decision denying a claim on the

25   merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

26   established  Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

27   2254(d)(1); *see* Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996); Carey v. Musladin, -- U.S. --,

28   127 S.Ct. 649 (Dec. 11, 2006).  A state court decision is "contrary to" clearly established Supreme

1    Court precedent if the state court applies a rule that "contradicts the governing law set forth in [the

2    Supreme Court's] cases." Lockyear v. Andrade, 538 U.S. 63, 73-74 (2003).  Under the "unreasonable

3    application" clause, the test is objective unreasonableness of the state court's application of "the correct

4    governing legal rule from this Court's cases" applied to "the facts of the particular state prisoner's

5    case," irrespective of whether the decision was "erroneous" or "incorrect."    Id. at 75-76.  A writ

6    subject to AEDPA may also be granted if the state court decision adjudicating a claim on the merits

7    "resulted in a decision that was based on an unreasonable determination of the facts in light of the

8    evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Winzer, 2007 WL 2080154

9    at *3.  A federal reviewing court must presume that a determination of a factual issue made by a state

10   court is correct.  28 U.S.C. § 2254(e)(1).  Petitioners have "the burden of rebutting the presumption

11   of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(2).

12                                  **2.**     **Reports And Recommendations**

13           A district judge "may accept, reject, or modify the recommended decision" on a dispositive

14   matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes.

15   FED.R.CIV.P. ("Rule") 72(b); *see* 28 U.S.C. § 636(b)(1).  The district judge may also "receive further

16   evidence, or recommit the matter to the magistrate judge with instructions."  Id.  The district judge

17   "shall make a *de novo* determination upon the record, or after additional evidence, of any portion of

18   the magistrate judge's disposition to which specific written objection has been made in accordance

19   with this rule." Rule 72(b); United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections are

20   made, the court must make a *de novo* determination of the factual findings to which there are

21   objections).  The court also reviews *de novo* the magistrate judge's conclusions of law.  Gates v.

22   Gomez, 60 F.3d 525, 530 (9th Cir. 1995).

23                                  **B.**     **Evidentiary Hearing**

24           In limited circumstances, an evidentiary hearing may be held to develop the factual basis of

25   a claim on federal habeas review. Cochran requests an evidentiary hearing pursuant to 28 U.S.C.

26   § 2254(e) on grounds the state courts and the magistrate judge erred in finding sufficient evidence to

27   support the duress component of his conviction, and he is purportedly entitled to an evidentiary hearing

28   on his confrontation rights contentions.   Dkt No. 48.

1        Rule 8 of the Rules Governing § 2254 Cases accords federal habeas courts discretion to hold

2  evidentiary hearings, although AEDPA "substantially restricts the district court's discretion to grant

3  an evidentiary hearing." Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999). An evidentiary

4  hearing is warranted on a claim (1) if the petitioner did not receive a full and fair evidentiary hearing

5  in state court, (2) if the petitioner did not fail to develop facts in state court, **and** (3) if the petitioner

6  alleges facts which, if proven, would entitle the petitioner to relief. Id. at 1078-79 (emphasis added).

7  The court finds Cochran is not entitled to an evidentiary hearing. He received a full and fair hearing

8  in state court, he identifies no facts he did not or could not develop in state court and, as discussed

9  below, his arguments in support of the Petition and in objecting to the R&R are mistaken.

10  Accordingly, his request for an evidentiary hearing is **DENIED**.

11     **C.**     **Cochran's R&R Objections Are Overruled**

12           **1.**     **The Record**

13        Cochran's Petition asserts: "His only defense [at trial] was that he did not force [his daughter],

14  nor did he threaten her at any time" and never "hit nor punished her for gaining her cooperation" when

15  he admittedly "committed sexual acts against his minor daughter," and Jennifer "never denied that

16  sexual behavior occurred." Pet. p. 7. He complains her testimony regarding the circumstances and

17  purported lack of duress were "ignored by the parties because it did not conform to the prosecutor's

18  desires." Pet. p. 7. The court addresses the Petition grounds and Objections to the R&R seriatim, in

19  particular consideration of the trial record as it elucidates the duress element of Cochran's crimes.

20        Jennifer testified at trial as a defense witness. On direct examination, in pertinent part, she

21  stated:  the sexual activity with her father began when she was in the fourth grade and went on for

22  several months; he would ask her "to start doing these things" before beginning; she was not afraid of

23  her father; he would not get mad; sometimes he would hurt her "a little bit, but not that much;" if she

24  asked him to stop, he would; he only videotaped her once; and he never grabbed her and forced her

25  to do those acts. RT pp.119-124. The prosecutor cross-examined Jennifer:

26             Q:    Now, you were talking about some things that your father did to you.
                     Were those things that you wanted to do?

27

28             A:    No.

1   RT 125:5-9.

2      Q:   Did your father ever ask you or tell you as far as whether you
            should tell about this?
3
       A:   He said no, because he might get in trouble, and I didn't want
4           him to get in trouble.

       . . .
5
       Q:   And do you remember how he said that?  And what I mean is,
6           is you're telling me as far as how you remember it.  See if you
            can remember the words that he used.
7
       A:   "Don't tell no one."
8
       . . .
9      Q:   And did he tell you what would happen if you did tell a teacher
            or your mother?
10
       A:   Yeah.
11
       Q:   What did he say would happen?
12
       A:   **He said he would go to jail**.
13
       Q:   **How would it make you feel when your dad would touch**
14           **you**?

15     A:   **Sometimes sad**.

16     Q:   **And sometimes another feeling**?

17     A:   **Mad that he's doing that**.

18     Q:   Okay.  And did you -- did you ever tell anyone as far as a friend
            at school or anyone?
19
       A:   No.
20
       Q:   Okay.  And why didn't you tell?
21
       A:   Because I didn't want him to get in trouble
22
   RT 128:17-129:15 (emphasis added).
23
            After Jennifer testified, the defense rested.  The prosecutor called FBI Special Agent Kristen
24
   Robinson as the People's rebuttal witness.  Agent Robinson had interviewed Jennifer at the time the
25
   search warrant was served in February 1998, when the child was about nine, and had prepared a report.
26
   RT 136:18.  Agent Robinson testified she showed Jennifer photographs of herself and her father
27
   engaged in sexual activity, conversed with the girl, and observed her.  In pertinent part:
28

Q:   Did she describe about what he would do with his penis?

A:   She pointed to her own genital area and said he would -- "He puts it in me" or "in there a lot."

Q:   Did you describe to you or did you ask her whether or not she was told not to tell about these touchings or the sexual activity?

A:   I did.

Q:   And what was Jennifer's statement in regards to that?

A:   I believe she said that her dad told her not to tell anyone about it or he would get in trouble.

Q:   Was it that he would get in trouble or that she would get in trouble?

A:   As I recall, it was her perception that she would get in trouble. She said later, "I'm scared that I'm gonna get in trouble for telling."  But I believe he told her "Don't tell anyone or else I'll get in trouble."  I'd have to look at my report . . .

. . .

Q:   And is that the report that you wrote in relation to this case after speaking with Jennifer?

A:   Yes, it is.  Okay.  It does say that she would get into a lot of trouble if she told anyone.

RT 137:12-138:20.

Whereas Cochran attempts to make much of the purported discrepancy in accounts of the reasons for Jennifer's commitment to her father to keep their sexual activity a secret -- *i.e.*, whether out of fear her father would get into trouble if she told or whether out of fear she herself would get into trouble if she told -- the court concludes either or both inducements to conceal the conduct would suffice to support an inference of inducement to acquiesce in the secretive conduct amounting to duress, and the trial record contains evidence of both motivations through Jennifer's own testimony and the testimony of Agent Robinson.  The court accordingly rejects that evidentiary objection.

### 2. Cochran's Sixth Amendment Witness Confrontation Rights Were Not Violated (Grounds Three And Five)

The Sixth Amendment's Confrontation Clause is a component of the Fourteenth Amendment's Due Process Clause applied to the states.  Pointer v. Texas, 380 U.S. 400, 405 (1965). "The Confrontation Clause provides two types of protections for a criminal defendant:  the right physically

1    to face those who testify against him, and the right to conduct cross-examination." <u>Pennsylvania v.</u>

2    <u>Ritchie</u>, 480 U.S. 39, 51 (1987). Cochran himself articulates the standard: "The confrontation clause

3    requires that a witness **give a statement under oath and submit to cross-examination**, and that the

4    jury (or trier of fact) be able 'to observe the demeanor of the witness in making his statement, thus

5    aiding the jury in assessing his or her credibility.'" Pet. pp. 40-41, *citing* <u>Maryland v. Craig</u>, 497 U.S.

6    836, 846 (1990) (emphasis added). The goal of the Confrontation Clause is to "ensure[] that

7    convictions will not be based on the charges of unseen and unknown -- and hence unchallengeable --

8    individuals." <u>Winzer v. Hall</u>, 2007 WL 2080154 at * 3, *quoting* <u>Lee v. Illinois</u>, 476 U.S. 530, 540

9    (1986). Most cases implicating the Confrontation Clause arise in the context of admitting out-of-court

10   statements or restricting the scope of cross-examination. *See* <u>Coy v. Iowa</u>, 487 U.S. 1012, 1016, 1017

11   (1988) ("the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses

12   appearing before the trier of fact"). Cochran's case raises neither of those concerns.

13       In Ground Three, Cochran contends his Sixth Amendment confrontation and due process rights

14   were violated during the presentation of the prosecution's case in chief because the prosecutor did not

15   call Jennifer as a witness. In Ground Five, he contends his Sixth Amendment rights were violated

16   because he was not accused by the abuse victim of having committed the charged crimes during the

17   state's case in chief, suggesting Jennifer's testimony for the defense actually refuted the necessary

18   element of force or duress. Cochran argues "the prosecutor deliberately *exercised his discretion* not

19   to call the alleged victim and have her testify to the allegations" in the Information, implicitly

20   acknowledging the state is not obligated to present at trial all the evidence it has against a defendant.

21   Pet. p. 9 (emphasis added). He also argues the prosecutor's election "not to call and solicit any

22   testimony from the alleged victim Jennifer" forced him to call her as a defense witness, thereby

23   purportedly "transfer[ing] the burden of proof onto petitioner." Pet. p. 35.

24       Cochran's argument Jennifer did not "testify against him" at trial as an "accuser" called by the

25   prosecution attempts to convert that evidentiary decision into itself a constitutional violation. He

26   ignores the overwhelming evidence of his guilt of the crimes charged. He ignores the fact of his bench

27   trial, where no arguable risk existed of mistaking the parties' respective burdens. He fails to appreciate

28   Jennifer actually testified under oath at trial, and confirmed the sexual abuse and the events depicted

on the videotape occurred, as Cochran himself admits. He was not restricted in his examination of that witness. The trier of fact had the opportunity to observe the child's demeanor and credibility in consideration of the other evidence presented. Cochran cites no authority for his apparent proposition the prosecutor must always call the crime victim as a necessary witness in its case in chief in order to obtain a valid conviction. He offers no reasonable explanation why an actual opportunity to examine a witness under oath is somehow inadequate to satisfy a defendant's confrontation rights. He received a face-to-face encounters with "all the witnesses appearing before the trier of fact," including Jennifer. Coy, 487 U.S. at 1017; *see also* Winzer, 2007 WL 2080154 at *3; Lee, 476 U.S. at 540.

Cochran's Confrontation Clause claims digress to challenge the *content* of Jennifer's trial testimony and misconstrue the constitutional standards he must satisfy in order to prevail on Sixth Amendment grounds.[1] The R&R rightly recommends this court find no Sixth Amendment violation associated with the decision not to call Jennifer as a prosecution witness, despite Cochran's unsupported complaint that calling the victim/accuser as a friendly witness is not the same as having her called by the prosecution. R&R 15:16-18. He has not demonstrated the state court's determination of this issue was objectively unreasonable nor his entitlement on any other basis to federal habeas relief on that theory. His objections to the R&R recommendation regarding his Confrontation Clause challenges are without merit. His characterization of the prosecutor's decision as constituting Jennifer's "absence from participation in the trial" or rendering the conviction unsustainable on insufficiency of evidence grounds (Pet. pp. 49-50) is patently frivolous. His objections on that basis are accordingly **OVERRULED**, and his request for habeas relief on those grounds is denied.

\\

---

[1] Cochran hypertechnically (and inaccurately) argues: "Petitioner submits that the confrontation clause was not remedied by him calling Jennifer C., and having her testify in his defense. As a defense witness, Jennifer did not testify she was forced to commit any of the alleged crimes. Jennifer C., did not testify that she felt duressed into committing any of the alleged crimes. Jennifer's testimony demonstrated that sexual acts were committed by her father (petitioner), but that she was not compelled to do so, nor because she feared him during the time of the acts or during the time of trial. **Petitioner was not afforded the opportunity to be accused by Jennifer, and was not afforded the opportunity to present a defense to her accusations**. Rather, petitioner was forced, to defend against the prosecutor's personal beliefs and observations. Jennifer **was not asked** about any specific act, was not asked if she was forced or placed under duress. The prosecutor made his argument based on his interpretations of what he observed from the videotape without making the inquiry." Pet. p. 41 (emphasis added).

3.      **Sixth Amendment Hearsay Testimony (Grounds Three and Five)**

Cochran also argues in support of his Grounds Three and Five his trial was constitutionally defective because the prosecutor did not call Jennifer to testify "to corroborate the statements given by FBI Agents Kyle Loven, Kevin Gormley, or Kristen Robinson" (Pet. pp. 40, 52), and the agents' testimony was purportedly hearsay, warranting invalidation of his conviction (Pet. pp. 39-40, 51-52). In particular, he contends the prosecutor "was relying entirely on the hearsay testimony of the FBI agents" (Pet. p. 40, Ground Three), and "[t]he prosecutor called the FBI Agents who testified concerning matters that [the victim] did not corroborate or repeat" (Pet. p. 52, Ground Five).

Hearsay is "testimony that is given by a witness who relates not what he or she knows personally, but what others have said, and that is therefore dependent upon the credibility of someone other than the witness."[2]  Statements "testimonial" in nature include "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." Crawford v. Washington, 541 U.S. 36, 51-52 (2004), *quoting* White v. Illinois, 502 U.S. 346, 365 (1992).  The magistrate judge conducted "an independent review of the record to determine whether the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court authority" inasmuch as the California Supreme Court did not discuss the admissibility of the FBI agents' testimony.  R&R 16:1-4.  The R&R recommends this court find no Sixth Amendment violation associated with Cochran's challenges to the FBI agents' testimony based on the prosecutor's decision not to call Jennifer to provide "corroborating" testimony at trial.

As a threshold matter, the R&R relied on Crawford, 541 U.S. at 59 (holding that "testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine"), decided shortly after Cochran file his Petition, for its analysis of this issue.[3]  "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution

---

[2]      Black's Law Dictionary (7th ed. 1999) p. 726.

[3]      At the time the R&R was prepared, the Supreme Court had not yet determined whether Crawford applies retroactively, whereas the Ninth Circuit had concluded it did in Bockting v. Bayer, 399 F.3d 1010, 1021 (9th Cir. 2005), *opinion amended on denial of rehearing*, 408 F.3d 1127, *reversed by* Whorton v. Brockting, -- U.S. --, 127 S.Ct. 1173 (U.S. Feb. 28, 2007).

actually prescribes:  confrontation."[4]  Crawford, 541 U.S. at 68-69, *overruling* Ohio v. Roberts, 448

U.S. 56 (1980).  Since the R&R was entered, however, the Supreme Court has determined Crawford

does not apply retroactively.[5]  Whorton v. Bockting, -- U.S. --, 127 S.Ct. 1173 (U.S. Feb. 29, 2007).[6]

Accordingly, the controlling authority applicable to Cochran's confrontation clause issue is the Roberts

holding:  the Confrontation Clause permitted the admission of a hearsay statement made by a declarant

unavailable to testify if the statement bore sufficient indicia of reliability.  Roberts, 448 U.S. at 66.

Nevertheless, Cochran cannot overcome the threshold obstacle to his theory:  Jennifer herself

was a trial witness.  According to Cochran, the prosecutor called FBI Agent Robinson "as a rebuttal

witness attempting to impeach the alleged victim's testimony." Pet. p. 56.  Cochran relies on Jennifer's

statements to Agent Robinson, as summarized in her report, did not include the word "fear,"

purportedly defeating the element of force or duress.  "The word she used was 'sad.'"  Pet p. 56,

*quoting* RT 140.   His challenge to the constitutionality of his convictions goes only to the means:

he disputes the force or duress element was proven.  Cochran characterizes:  "Jennifer's testimony

consisted of answers denying that petitioner had committed the charged offenses by means of force

---

[4]   "If a witness whose statements are being admitted through the trial testimony of someone else **does not appear at trial** to provide **an opportunity** for cross-examination with respect to the absent witness' purported statements, the admission of such evidence can only satisfy the Sixth Amendment's confrontation guarantee upon a showing that witness is unavailable and a prior opportunity for cross examination regarding the statements existed." Crawford, 541 U.S. at 59, 68 (emphasis added).

[5]   The Whorton Court held that Crawford announced a new procedural rule, but it did not fall within either exception recognized in Teague v. Lane, 489 U.S. 288 (1989) to the bar against retroactivity, as it is neither a "watershed rule" nor one "without which the likelihood of an accurate conviction is seriously diminished." Therefore, the prior rule of Ohio v. Roberts, 448 U.S. 56 (1980) controls the Confrontation Clause dispute over the permissible uses of hearsay statements at Cochran's trial, to the extent there exists any hearsay issue.

[6]   In Whorton, the defendant was tried for sexual assault on his 6-year-old stepdaughter.  The trial court determined the child was too distressed to testify and allowed the defendant's wife and a police detective to describe the child's out-of-court statements about the assaults (as permitted by Nevada law), rejecting the defendant's Confrontation Clause objection.  On direct appeal, the state supreme court found the child's statements constitutional under Ohio v. Roberts, the controlling precedent on the issue at that time, permitting the admission of a hearsay statement if the statement bore sufficient indicia of reliability.  Roberts, 448 U.S. at 66. The district court denied the defendant's Confrontation Clause claim in a subsequent federal habeas petition.  While that defendant's appeal was pending in the Ninth Circuit, the Supreme Court overruled Roberts in Crawford v. Washington, 541 U.S. 36, holding:  "'testimonial statements of witnesses absent from trial' are admissible 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness],'" concluding that "Roberts' interpretation of the Confrontation Clause was unsound." Whorton, 127 S.Ct. at 1175, *quoting* Crawford, 541 U.S. at 60.

04cv1796

1   or duress," and "[s]he repeated her testimony on cross-examination."  Pet. p. 56, *citing* RT 117-124.

2   He represents in conclusory fashion:  "the State is attacking the victim of these crimes.  Her veracity

3   is being challenged.  The only accuser remaining is the state prosecutor."  Obj. p. 27.

4        Although Agent Robinson testified regarding extrajudicial statements Jennifer made during

5   her interview with the child the day the search warrant was served (*see, e.g.*, Lodg. 2, pp. 135-142),

6   the agent's testimony did not contradict Jennifer's trial testimony for the defense in any material way.

7   The record reflects, as reproduced above, Jennifer confirmed the sexual conduct Cochran admits, she

8   feared he would go to jail if she revealed their secret activity, and her father's sexual advances made

9   her mad or sad.  Cochran nevertheless insists a failure of Agent Robinson and of the prosecutor to ask

10  Jennifer if she was "scared of" her father caused a fatal failure of proof on the element of force or

11  duress required for his convictions to be valid (Pet p. 56), but he misstates the record and the

12  considerations applied in finding duress.  The California courts define "duress" in the context of sexual

13  offenses against minors differently from a "duress" element or defense to other types of crimes because

14  CAL. PENAL CODE § 288, for example, is "designed in part to punish the obtaining of a child's

15  participation in a lewd act in violation of the child's will."  People v. Pitmon, 170 Cal.App.3d 38, 49

16  (1985); *see* People v. Leal, 33 Cal.4th 999, 1009 (2004) (even a parent's threatened restriction

17  constitutes "hardship or retribution" within the meaning of the Pitmon definition when coercion of a

18  minor to commit lewd acts is at issue).  The R&R notes no objection was made at trial to the

19  admission of Agent Robinson's testimony.  R&R p. 18 n.8.

20       Finally, Cochran's hearsay arguments regarding the testimony of Agents Gormley and Loven

21  are without merit. As summarized by Cochran, Agent Gormley identified Cochran, testified regarding

22  the nature of the physical evidence seized, the circumstances associated with the arrest, and the copies

23  he made of the original videotape seized at the time of Cochran's arrest for the purpose of preserving

24  the original intact.  Pet. p. 55, *citing* RT 56, 64.   None of that testimony constitutes hearsay.  Agent

25  Loven testified regarding statements "allegedly made by petitioner after petitioner had been advised

26  of his Miranda rights."  Pet. p. 55, *citing* RT 87.  Cochran does not dispute he admitted engaging in

27  sexual activity with his minor daughter.  He does not dispute the conduct depicted on the videotape

28  occurred.  His sole defense by his own characterization was an alleged failure of proof that the means

or inducement satisfied the force or duress element of the crimes charged. No "corroboration" of Agent Loven's testimony from Jennifer or any other witness was needed. Each of the testifying agents had first-hand knowledge of the subject matter of his or her testimony. The prosecutor did not "deny the accused his usual right to force the declarant to submit to cross-examination." Winzer, 2007 WL 2080154 at *3, *quoting* Lilly v. Virginia, 527 U.S. 116, 124 (1999). Cochran accordingly has no basis for his contention Agents Gormley or Loven gave inadmissible hearsay testimony, let alone that such testimony resulted in a violation of any federal right. *See* R&R 16:18-17:4.

In summary, even applying Crawford, Cochran was not deprived of his opportunity to confront any witness appearing before the trier of fact or whose extrajudicial statements may have contributed to his conviction. On the contrary, Jennifer was Cochran's own witness. Agent Robinson testified as a rebuttal witness, with no indication her testimony was unreliable and in consideration of such indicia of reliability as the timing of the interview with Jennifer, her age, the circumstances, and the like. Roberts, 448 U.S. at 66. Neither Cochran nor Jennifer disputes the events charged occurred.

The R&R recommends this court finds the state courts' denial of Cochran's Confrontation Clause claims was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor an unreasonable determination of the facts, and this ground for the Petition be denied. 28 U.S.C. § 2254(d)(1). Cochran's Objections allude only briefly to the R&R analysis regarding the FBI agents' testimony, and continue to challenge as hearsay only the portion involving Agent Robinson. His Objections are **OVERRULED**, and the court adopts the R&R recommendation that his Confrontation Clause grounds for habeas relief be denied.

### 4.   Sufficient Evidence Supports The Convictions (Count Four)

Cochran submits his Sixth Amendment rights were violated because insufficient evidence supports his conviction of Counts 1 through 38 in the absence of any "person [who] testified that he committed any charged act by using force, violence, duress, menace, or that the victim was in fear of immediate and unlawful bodily injury." Pet. p. 9. He also contends the State failed to prove he committed twelve of the charged offenses "because the charging instrument fails to allege or charge that these offenses were committed for the purpose of 'sexual arousal, gratification, or abuse' and fails

\\

1    to allege or charge the means by which these offenses were committed, i.e. by use of 'force, violence,

2    duress, menace, or fear of immediate and unlawful bodily injury . . . ." Pet. p. 35.

3            Petitioner admitted misconduct against his minor daughter when it was
             discovered. However, petitioner did not commit any of the offenses by
4            using force or duress. As the prosecutor plainly stated that petitioner"
             "cajol[ed], and coaxed Jennifer." (RT 161.) That petitioner used terms
5            of endearment such as "sweetheart" to entice Jennifer. (RET 161.)
             Cajoling, coaxing, coaching, and using terms of endearment cannot
6            give rise to claims that Jennifer was forced or placed under duress.

7    Pet. p. 65.

8            "The standard for reversal on insufficiency of the evidence is set forth in Jackson v. Virginia,

9    443 U.S. 307 [] (1979): 'whether, after viewing the evidence in the light most favorable to the

10   prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

11   reasonable doubt.'" Gilpin v. McCormick, 921 F.2d 928, 930 (9th Cir. 1990), *quoting* Jackson, 443

12   U.S. at 319 (emphasis original). Cochran's admissions, the absence of any dispute the sexual activity

13   occurred, and the videotape and testimonial evidence against him, measured against the statutory

14   elements of the sex crimes he was accused of committing, render preposterous his insufficiency of

15   evidence allegations. In addition, even his own Petition arguments render preposterous his contention

16   the charges were so open-ended as to improperly expose him to future jeopardy, or that he "was denied

17   a fair and impartial trial based on the facts that the prosecution failed to provide sufficient 'notice' of

18   the charges, and failed to name or identify any victims." [7]   Pet. p. 35.

19           The prosecutor clarified the state was not relying on force, violence, menace, or fear of bodily

20   injury to substantiate the means element of the crimes, but rather on duress. Cochran reproduces the

21   Pitmon standard, discussed above, in his Petition:

22   _____

23           [7]   "Petitioner submits that he was placed on notice that he had to defend against sexual acts committed
             by the use of duress, to an information that fails to name or identify a victim and fails to charge or
             allege some or all of the elements necessary for a conviction." Pet. pp. 32-33. "Further, as to
24           [information counts 1, 14, 15, 17, 18, 19, 20-27, 35 and 36], absent is the name or identity of a victim."
             Pet. p. 26. The argument is specious when only his conduct toward Jennifer was ever at issue in his
25           state court proceedings, and the court dismisses it out of hand as offering any ground warranting
             reversal of his conviction. Cochran's "double jeopardy" contention is similarly frivolous. He argues
26           the manner of charging interferes with his ability to assert a future double jeopardy argument on
             grounds no victim's name was expressly stated in each of 26 of the counts in the charging instrument:
27           "If petitioner is retried, it would be impossible to defend against open charges. . . . Theoretically, any
             one or more of these counts could be charged to victims other than Jennifer." Pet. p. 34. A federal
28           habeas court does not deal in speculation.

1
2
3
4
5

> [W]e find duress as used in the context of [CAL. PENAL CODE] section 288 [Forcible Lewd Acts Upon A Child] to mean a direct **or implied threat** of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted. [¶] **The total circumstances, including the age of the victim, and his relationship to defendant are factors to be considered in appraising the existence of duress**.

6    Pet. p. 47 (emphasis added), *quoting* <u>Pitmon</u>, 170 Cal.App.3d at 50-51.

7    Cochran acknowledges he has "no argument with the [prosecutor's] definition of duress" as

8    argued at his trial.  Pet. p. 62.  The prosecutor stated:

9
10
11
12

> Duress, your honor, is psychological coercion.  At its heart, it encompasses a threat, express or implied.  That is what duress is.  That's what the common meaning of duress is.  And that's what the case law requires, that there be the psychological coercion. plus some other threat that can be implied, that can be inferred from the conduct of the defendant, and that can raise the inference of that implied threat in the mind of the victim . . .

13   Pet. p. 62, *quoting* RT 168.

14   Cochran elaborates his challenge:

15
16
17
18
19
20

> [D]efinition without proof is not sufficient for conviction. Jennifer was asked by defense counsel and prosecutor if she feared her father, and she stated that she did not. (RT 122:23-24.) Jennifer was asked if she was threatened. Jennifer stated that she was not. (RT 123:10-11.) She was asked if she was punished afterwards.  Jennifer stated that she was not. (RT 123:15-16.) Jennifer was asked if she was grabbed or forced to commit any of the acts.  Jennifer stated that she was not.  (RT 123:26-28.)  The only evidence produced and presented and argued by the prosecutor to find duress was the alleged secret between Jennifer and petitioner.

21
22   Pet. 62, *see* Pet. p. 63 (Cochran acknowledges Jennifer also testified he hurt her at times, including an audio portion of the videotape where he stated: "It's almost -- I'm almost done").

23   As demonstrated in the R&R, the state court finding all elements of the alleged crimes were

24   proven, including duress, is not objectively unreasonable, nor has Cochran carried his burden to rebut

25   with clear and convincing evidence the presumed correctness of a state court's determination of a

26   factual issue.  28 U.S.C. § 2254(e)(2).  His eight pages of Objections to the recommended result on

27   the duress issue revisit his meritless contentions.  For example, he quibbles with the use of specific

28   words attributed to Jennifer as "not true," such as her fear he would "go to jail" if she told anyone.

Obj. pp. 11-13.  That particular example, however, ignores Jennifer's trial testimony articulating that specific fear.  Lodg. 2, RT at 129.  His other arguments have been previously rejected -- *i.e.,* no opportunity to confront his "accuser" (whom he identifies as his daughter rather than the State of California), and denial of his confrontation rights for failure of the prosecutor to call Jennifer as "an adverse witness."  For all the reasons discussed above, the court **OVERRULES** Cochran's Objections to the R&R recommendation his sufficiency of evidence grounds for habeas relief be denied.

### 5.   No Alleged Prosecutorial Misconduct Denied Petitioner A Fair Trial Or Due Process (Count Six)

Cochran contends he was denied his Sixth Amendment right to due process and a fair trial because the trial court purportedly "disregarded" Jennifer's testimony, his "key-friendly witness," in that the "key-victim for the state testified against the prosecutor's assertions."  Pet. P. 9.  Cochran acknowledges a "prosecutor is, of course, given wide latitude during argument" to make "fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom."  Pet. p. 58, *citing* Berger v. United States, 297 U.S. 78, 88 (1936).  Prosecutorial misconduct can only support federal habeas relief when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Cochran's assertion prosecutorial misconduct occurred during closing argument is facially unsupported by the record,  particularly in a bench trial. Even if the prosecutor overstepped, none of the challenged remarks were so potentially misleading or prejudicial that they deprived him of a fair trial.  Donnelly, 416 U.S. at 641.

Cochran quotes extensively from the prosecutor's closing arguments.[8]  The prosecutor reviewed in detail the conduct depicted on the videotape and characterized, among other things, the psychological relationship between father and daughter as reinforcing the duress element of the

---

[8]     The prosecutor organized his argument regarding proof of the duress element around eight specific points illustrating "psychological force" from which duress on a child may be implied, acknowledging physical force was not the means Cochran used.  Lodg. 2, RT 158-163. These included the  nature of "the relationship, the age, the size, the secret, the gifts, the continual sexual attacks," and the "coaxing, coaching" and "verbal commands" memorialized on the videotape" as ample support for the aggravated nature of the assaults warranting punishment under Penal Code § 269.  Lodg. 2, RT 166:3-10.

1   crimes.[9]  He reminded the court of Jennifer's trial testimony when she answered "No" to the question

2   whether the things she is shown doing on the videotape are things she wanted to do.  Pet. pp. 56-57,

3   *citing* RT 156-158.  Cochran acknowledges there was evidence of a  "secret" between Jennifer and

4   himself to keep knowledge of the sexual conduct from anyone else, as argued by the prosecutor, either

5   because he told her he would get in trouble if anyone found out or because he told her she would get

6   in trouble if anyone else found out.  Either iteration supports the "secret" the prosecutor then argued

7   satisfied the "duress" element of the crimes in the form of psychological coercion.

8        As noted in the R&R, certain of the prosecutor's statements Cochran urges the court find

9   sufficiently egregious to warrant setting aside his conviction in fact merely track evidence

10   memorialized in the trial record:  "the victim herself testified that Petitioner told her not to tell anyone

11   'because he might get in trouble,' and she explained that she did not tell because [she] didn't want him

12   to get in trouble.'" R&R 20:15-17, *quoting* Lodg. 2 at pp. 128-129.  "Thus, the prosecutor's statement

13   was not merely a reasonable inference from the evidence presented, but was an almost verbatim

14   recitation of the victim's own testimony," and "accurately reflects evidence adduced at trial," falling

15   "squarely within the permissible scope of closing argument." R&R 20:17-20.  The record reveals the

16   prosecutor's conduct was neither improper nor can it be reasonably found  the prosecutor's argument

17   violated Cochran's due process rights.  His Objections to the R&R on that ground are **OVERRULED**.

18        **6.    Cochran's Constitutional Challenges To The Use Of A Copy Of The
              Incriminating Videotape Rather Than The Original And To Allegedly**
19        **"Perjured" Testimony Afford No Basis For Relief (Count Ten)**

20        The R&R notes Cochran's "improper evidence" and "perjured testimony" claims never resulted

21   in a reasoned state court decision on the issues.  The Magistrate Judge accordingly conducted an

22   independent review of the record to determine whether those claims rise to a level that could support

23   federal habeas relief and concluded not.

24   _____

25   [9]   Cochran argues the prosecutor "committed misconduct by offering his personal interpretation of the
        evidence without calling the alleged victim to confirm those assertions."  Obj. p. 4.  For example, he
26   is highly critical of the prosecutor's generalized observation regarding the intimidation parents can
        assert over their children without having to resort to overt threats or other forms of coercion, due to
27   the inequality of power and control as between any parent and any child.  *See* Obj. p. 31, quoting Lodg.
        2 pp. 157-158; *see also* Obj. pp. 31-32.  Cochran expends multiple paragraphs attempting to convert
28   the prosecutor's argument into some testimonial transgression as a "substitution" of his own views in
        place of testimony he purportedly did not elicit from Jennifer.

1    Cochran does not deny the videotape depicts conduct that actually occurred.  He cites no

2    discrepancies between the original and the copy.  Agent Gormley testified there were no differences

3    between the reproduced copy (Peoples Exhibit 1) and the original (People's Exhibit 3).  Rather,

4    Cochran appears to contend the quality of the copy made of the original videotape rendered the copy

5    somehow insufficient to support his conviction for the illegal acts depicted on the tape.  To the extent

6    he attempts to raise a "best evidence" rule violation based on the trier of fact having seen a copy rather

7    than the original, a state's rule of evidence "is neither a necessary nor a sufficient basis for granting

8    habeas relief." Jammal v. Van de Kamp. 926 F.2d 918, 919 (9th Cir. 1991).  An evidentiary ruling

9    may receive federal habeas review only if the ruling violated federal law, a showing Cochran wholly

10   fails to make.  *See* Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995) (federal habeas relief

11   predicated on a state court's evidentiary ruling requires a demonstration the ruling "infring[ed] upon

12   a specific federal constitutional or statutory provision or . . . depriv[ed] the defendant of the

13   fundamentally fair trial guaranteed by due process").

14   Although Cochran couches the claim as a facet of purported prosecutorial misconduct, the

15   argument is without merit as warranting habeas relief, no matter how he characterizes it.  There was

16   never an issue about the accuracy of the videotape content.  Moreover, Cochran's arguments are purely

17   speculative because, as noted in the R&R, "the *original*, small format videotape seized from

18   Petitioner's home was introduced into evidence during Petitioner's trial as Peoples Exhibit 3.

19   (Lodgment No. 2 at 63.)  The trial judge certainly had the opportunity to view the original videotape

20   and, indeed, may have done so in making his ruling."  R&R 25:23-28.

21   Similarly, Cochran's challenge to admission of a ten-page transcript of the audio portion of the

22   videotape as a basis for federal habeas relief is without merit.  He asserts the transcript was

23   "manufactured" by the prosecutor, but he identifies no portion of the transcript he contends is

24   inaccurate. Agent Gormley authenticated the document, testifying it merely transcribed the audiotrack

25   of People's Exhibit 1.  Lodg. 2 p. 77.  Defense counsel raised no objection to the transcript after an

26   opportunity to review it for accuracy, affirming:  "I have reviewed [the transcript] -- for accuracy.  It

27   appears to be accurate to what the conversation is in People's 1 and 2."  Lodg. 2 p. 155.  The court

28   adopts the R&R conclusion that introduction of the transcript had no material effect on the outcome

1    of Cochran's trial, and the determination of this issue in state court was not objectively unreasonable,

2    foreclosing federal habeas relief on that basis.

3          Cochran also raises objections to the prosecutor's introduction of two packages of photographs,

4    one containing images posted on the Internet depicting Cochran engaged in sex acts with his daughter,

5    and the other described as "computer photos" of "child pornography" copied from Cochran's computer

6    during the FBI search of his home.  People's Exhs. 2, 5.  Those evidentiary rulings are not cognizable

7    on federal habeas review.  *See* Jammal, 926 F.2d at 919.  In any event, Agent Gormley testified

8    regarding the provenance of those images.  Lodg. 2 pp. 57-59.  Agent Loven testified Cochran

9    admitted to him during an interview the day of his arrest, after waiving his Miranda rights, the

10   photographs in Exhibit 2 were of his daughter and himself and that he had posted the photographs on

11   the internet, authenticating them at that time by initialing and dating them.  Lodg. 2 pp. 89, 92-94.  For

12   the reasons discussed in the R&R on the issue of trial Exhibits 2 and 5, the court finds admission of

13   those exhibits in no way denied him due process.

14         Finally, Cochran asserts prosecutorial misconduct in the proffering of Agent Gormley's

15   purportedly perjured testimony at trial.  Pet. pp. 102-106.  "Perjury" is the "act or instance of a person's

16   deliberately making material false or misleading statements while under oath."   Black's Law

17   Dictionary, 8th ed. 2004,  p. 1175.  The R&R culls from Cochran's argument two allegations of

18   perjury:  Agent Gormley's misstatement of the number of photos in the packet of still pictures, and

19   Agent Gormley's characterization of magazine clippings and a book as "pornography."  To constitute

20   a due process violation rendering a trial fundamentally unfair, the prosecution must knowingly have

21   used the perjured testimony, and there must be  a "reasonable likelihood" the false testimony could

22   have affected the judgment of the jury in convicting the defendant.  United States v. Agurs, 427 U.S.

23   97, 103 (1976); *see* Donnelly, 416 U.S. 637.  The defendant bears the "heavy burden" to establish

24   perjured testimony was used. United States v. Henson, 123 F.3d 1226, 1240 (9th Cir. 1997), *overruled*

25   *on other grounds by* U.S. v. Foster, 165 F.3d 689 (9th Cir. 1999).

26         As a threshold matter, this court finds neither statement can reasonably be construed as

27   "perjury" under the legal definition.  With respect to the number of photographs in the packet, if error

28   there was, the R&R correctly concludes Cochran wholly fails to show how such a misstatement, even

if intentional, so infected his trial with unfairness as to constitute denial of due process.  With respect

to Agent Gormley's characterization of the two bags of evidence seized at Cochran's home as

"pornography," not only does Cochran fail to show the statements were false or deliberately misleading

and then knowingly used by the prosecutor to mislead the court, but also this court perceives no risk

the trial court accepted uncritically that descriptive testimony in reaching its verdict.  "The trial court

was certainly aware of the legal distinction between 'pornography' and 'nude photographs,' and was

given ample opportunity to view the evidence itself and weigh it accordingly," eliminating any

"reasonable likelihood that Agent Gormley's testimony could have affected the decision in this case,

especially considering the substantial other evidence against Petitioner."  R&R 31:9-13.  Cochran's

Objections to the recommendation this court find no constitutional infirmity in his conviction

predicated on the alleged perjury are **OVERRULED.**

### 7.   Claim Five:  Motion To Acquit

Cochran argues in his Objections  the Respondent's failure to address his Petition Claim Five

asserting his Motion To Acquit should have been granted ought to be construed as a concession the

claim has merit.  He contends the Magistrate Judge's failure to address the claim further supports its

merit.  Obj. p. 39; Pet. pp. 9, 19.

> Petitioner has argued, and continues to argue, that at the close
> of the prosecution's "case in chief" (RT 115-116), the only evidence
> presented was hearsay coming from the FBI Agents and from the
> prosecutor's personal observations and conclusions.  The prosecution
> elected not to call Jennifer, the alleged victim in the case.

Pet. p. 19 (ignoring the primary evidence of record:  the videotape depicting the illicit acts); Pet. p. 54

("Petitioner was entitled to an acquittal, as a matter of law, based on the prosecutor's failure to call

Jennifer C., and have her testify to the alleged conduct").

As the court has previously rejected the grounds asserted in the motion as unmeritorious, no

cognizable habeas issue is presented associated with the propriety of the trial court's treatment of the

Motion To Acquit.[10]  Although neither the Respondent nor the R&R discusses Cochran's Claim Five

---

[10]   The record reflects defense counsel orally noticed "the court and counsel of an 1118 motion to dismiss
the 269" and advised she anticipated filing a written motion that "makes reference to some of my
anticipated testimony that I hope to elicit from the alleged victim." Lodg. 2 p. 116.  Defense counsel
asked leave to preserve the motion "and maybe defer it to close my case, where I can argue it where

1  in the context of whether the trial court erred in denying his motion at the conclusion of the

2  government's case in chief, the underlying theories of error were fully addressed in the Return and in

3  the R&R and have been rejected as grounds adequate to support federal habeas relief.

4  **III.    CONCLUSION AND ORDER**

5      For all the foregoing reasons, the court finds Cochran's convictions were not contrary to nor

6  an unreasonable application of clearly established Supreme Court authority, nor was the state courts'

7  decision based on an unreasonable determination of the facts in light of the evidence presented, nor

8  is the result objectively unreasonable.   The evidence overwhelmingly supports the propriety of

9  Cochran's convictions.   Accordingly, **IT IS HEREBY ORDERED** the court **OVERRULES**

10  Petitioner's Objections to the R&R, **ADOPTS** the R&R to the extent elaborated above, **DENIES**

11  Petitioner's request for an evidentiary hearing, **DENIES** the Petition, and directs that judgment be

12  entered accordingly, disposing of this case in its entirety.

13      **IT IS SO ORDERED**.

14  DATED:  August 28, 2007

15

16  **HONORABLE LARRY ALAN Burns**
    United States District Judge

17

18

19

20

21

22

23

24

25

26  all the facts have been elicited." Lodg. 2 pp. 116-117.  The prosecutor acquiesced, and the court
    "deferred on the ruling on the motion until apparently the girl testifies." Lodg. 2 p. 117. The acquittal
27  issue was taken up again at the conclusion of trial testimony when defense counsel filed her written
    motion, and the parties agreed to argue the motion as part of their closing arguments inasmuch as the
28  trial was a bench trial. Lodg.2 146, 149-155.